FRANCISCO ZALDUONDO, Plaintiff and Appellee, v. ESTHER MÉNDEZ BAS ET AL., Defendants and Appellants.

No. 10723.    Argued February 6, 1953.—Decided April 20, 1953.

*Romany & Romany* for appellants.  *Francisco González, Jr.,* for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

Francisco Zalduondo filed a suit for the fixing of boundaries against Esther, Rafael, Eduardo, Abigail, Sarah and Julio Méndez Bas.  He alleged therein that he is the owner of a rural property known as "Unión," measuring 177 cuer-

das and 33 hundredths and 32 thousandths, located in the Sabana Ward of Luquillo, which he describes in detail; that the defendants are co-owners of an undivided property known as "La Paloma," measuring 490.14 cuerdas, which he also describes in detail; that the property of the plaintiff is bounded by the property of the defendants on the North "and that on the boundary line there is a portion of approximately five cuerdas which is part of the 'Unión' property belonging to the plaintiff, the right to which the plaintiff claims in good faith and of which parcel the defendants are in possession"; that to protect his right of ownership to the aforesaid parcel of approximately five cuerdas it is necessary to make a survey, that the defendants have not authorized and refused to consent to the survey within three days after they were required to do so in writing and by registered mail since May 13, 1948.

The defendants moved for the dismissal of the complaint on the ground that it did not state facts constituting a cause of action. Their motion was denied and they answered the complaint accepting the fact that the property known as "Unión" is owned by the plaintiff and the property known as "La Paloma" by the defendants, but they denied that the former bounds the latter on the North, alleging to the contrary that the northern boundary of the property called "Unión" was the Sabana River and not La Paloma. The defendants further denied the existence in their property, La Paloma, of any parcel of land belonging to the Union property; that the plaintiff had no right to claim any parcel of land in the defendants' estate La Paloma and that the allegation of the plaintiff to that effect had not been made in good faith. As an affirmative defense, the defendants alleged that for over 50 years they had been in possession of La Paloma with the correct boundaries as set forth in the answer and that said property had been fenced by its four cardinal points during all that time.

After a trial on the merits, the court *a quo* entered judgment ordering the survey requested and ordering the defendants to pay one half of the expenses incurred on account of the survey, plus costs and attorney's fees. The defendants have appealed from that judgment alleging that the court *a quo* committed eight errors, which we shall now turn to discuss.

The first of said assignments is directed to the sufficiency of the averments of the complaint. The appellants argue that under Rule 34 (*b*) of the Rules of Civil Procedure the mere allegation that there is "a portion of approximately five cuerdas which is part of the Unión property belonging to the plaintiff the right to which the plaintiff claims in good faith and of which parcel the defendants are in possession," is not enough but that it is necessary to allege facts showing the court that "the plaintiff believed or was entitled to believe in good faith that he was entitled to claim the possession or ownership of or a share or interest in La Paloma, owned by the defendants." They are not right. Such argumentation relies on the scope they ascribe to the language used in several cases from Federal Courts construing Rule 34 (subdivision (*a*) of our Rules) to the effect that good cause must be shown to request the remedy afforded by said Rule. We need not decide now the validity of that contention. This case falls under subdivision (*b*) of Rule 34,[1] not under subdivision (*a*). This subdivision

---

[1] Said subdivision provided:

"(*b*) *Action for Survey.*—By the filing of a complaint and in accordance with the procedure prescribed by these rules, any person having a bona fide claim to the possession or ownership of, or a share or interest in, real property which is or which he has good reason to believe is, in the possesion of another, and it is necessary for the ascertainment, enforcement, or protection of such rights or interests, that an examination or survey of such property be had or that photographs of such property or any object or relevant operation thereon be taken, and the person in the possession thereof fails or refuses to consent thereto for three days after demand on him made in writing, the district court where the property is located may issue a decree ordering that said acts be carried out, whether

is an addition to said Rule having no precedent in the Federal Rules. Said subdivision (*b*) is an adaptation of § 286 of our Code of Civil Procedure, which prescribed the procedure to request a survey. This right is established by § 319 of the Civil Code (1930 ed.),[2] *Zayas* v. *Land Authority*, 73 P.R.R. 837. Under the aforesaid Rule the complaint must set out (1) a description of the property; (2) the interest which the party claims to have therein; (3) the name of the person in possession of the property; (4) the reason why the authorization for making the survey is requested; and (5) the demand made upon the other party and the refusal thereof. The complaint in the instant case complies with all these requirements. Aside from this, we have repeatedly held that if from the allegations of a complaint, construed in the light most favorable to the plaintiff and with every intendment regarded in his favor, there arises a valid claim that might entail some relief, the complaint should not be dismissed. *Cruz* v. *Ortiz, ante,* p. 298 and cases therein cited. The court *a quo* did not err in denying the motion to dismiss.

▆▆ The defendants also allege that the court *a quo* erred in denying their motion for nonsuit. Their motion was based on the fact that the plaintiff had not proved that in the La Paloma property belonging to the defendants, he (plaintiff) had the five cuerdas he alleges belong to him. Their position on appeal is to the effect that "The plaintiff should have brought forth his titles, justified somehow that some of his land was missing, proved that the missing

---

the claimant has an action concerning such claim pending in such court or not. The complaint shall set out a description of the property, the interest which the party claims to have therein, the name of the person in possession of the property, the reason why the authorization for the taking of photographs or for making the examination or survey is requested, the demand made upon the other party, and the refusal thereof."

[2] Said Section provides:

"Section 319.—Every owner has the right to demand the fixing of the boundaries of his property, giving notice thereof to the owners of adjoining tenements.

"The same privilege belongs to those having real rights."

land was precisely in the property of the defendants," and that having failed to do this, the motion for nonsuit lay. They are not right either. A motion for nonsuit should not be granted when there is at least some evidence supporting the complaint. *Suárez* v. *Saavedra*, 52 P.R.R. 662; *Rosado* v. *Ponce Railway and Light Co.*, 18 P.R.R. 593. If this were an action of revendication, the appellants might perhaps be right. But the action exercised here is an action for the fixing of boundaries, intended to determine the confused boundaries of the two contiguous estates. 3 Manresa 307. The motion for nonsuit clearly did not lie inasmuch as the plaintiff, in addition to the plans he presented to prove, as they did prove, that his property bounded on the property of the defendants and not on the Sabana River, testified that there is no definite boundary between both properties (p. 5 T. of E.). If, as above stated, the purpose of the action for a survey is to determine the confused boundaries between two contiguous estates, the evidence to the effect that there is no definite boundary between both properties was enough to deny the motion for nonsuit. As stated by Manresa in his *Comentarios al Código Civil Español*, Vol. 3, p. 311:

"... In an action for survey a certain and particular thing may not be claimed as belonging to us as owners. It is precisely because of the indefiniteness of one property confused with the adjoining property, that the fixing of landmarks defining the boundaries is requested, putting an end to the confusion."

The cases cited by the appellants are not in point inasmuch as the action exercised in them was an action of revendication.

■ The third error is directed against the ruling of the court *a quo* permitting Zalduondo, the plaintiff, to answer a question posed by his attorney. The question was: "Q. —According to your best information and belief, about how much land, more or less, is La Paloma usurping in the northern boundary of your property?" The appellant objected

to that question on the ground that the answer would involve a conclusion of law of the witness. This witness had previously testified that his property bounds the property of the defendants on the North; that said boundary was not definite and that he had brought this action in order that the proper boundary be fixed. Plaintiff's documentary evidence also established the fact that his property bounds the property of the defendants on the North. On the other hand, the evidence presented by said defendants was to the effect that it was not true that plaintiff's property bounded theirs on the North, that instead, at that point, the Sabana River separated one property from the other. If contrary to the defendant's claim the bounds of the plaintiff's property extend on its North boundary beyond the said river, it would result, in consequence thereof, that some part of that property is being possessed by the defendants. Therefore, the error assigned, if committed, would be neither prejudicial nor reversible.

■■ The fourth assignment is that the court *a quo* erred "in giving probative value to the plans presented in evidence by the plaintiff without it being proved that such plans had been correctly drawn in accordance with the courses and distances set forth in the plaintiff's ownership titles which were not presented in evidence." In its finding of fact No. 5, the court *a quo* says: "That the plans and survey certificates offered in evidence show that the property of the plaintiff, called Union, is bounded on the North by the property of the defendants called 'La Paloma.'" It thus follows that the judge of the court *a quo* considered all the plans offered in evidence, those presented by the plaintiff as well as those presented by the defendants. He thereby settled any conflict of evidence which might arise therefrom. It is not alleged that he committed manifest error in thus weighing that evidence or that he was moved by passion, prejudice or partiality. We cannot, therefore, disturb that finding. *Viera*

v. *Arizmendi, ante,* p. 36. Moreover, one of the plans is a survey certificate of the Union estate of the plaintiff made in 1912 by two surveyors and which bears the signature of the defendants' mother acknowledging her agreement to the boundaries fixed therein. Said plan shows that the property of the plaintiff is bounded by defendants' on the North. This is contrary to the constant allegation of the defendants that their property is bounded by the Sabana River and not by the property of the plaintiff. The court *a quo* could consider said plan, *cf. Semidey* v. *Heirs of Salichs et al.,* 34 P.R.R. 65, and conclude that there is a conflict and confusion as to the boundaries.[3] To settle that conflict a survey is necessary.

▌ By the fifth assignment of error it is alleged that the court *a quo* did not "comply with Rule 52 for it made no pronouncement as to the question of prescription alleged by the defendants which was one of the vital and fundamental issues in the case." No error was committed. An action for a survey, as already stated, is intended to end the confusion of boundaries. The question of prescription or usucapion can not be litigated therein. Judgment of December 13, 1870 of the Supreme Court of Spain (23 *Jur. Civ.* 195). This rule causes no prejudice to defendants since an action for a survey neither gives nor takes away rights. *Zayas* v. *Land Authority, supra.* To that effect, Manresa, in his aforesaid work, says at p. 305:

"Such action is certainly quite different from an action of revendication, which, in a subsidiary way, takes place when the bounds of several contiguous estates have been already demarcated, or when, as a consequence of the demarcation, lands believed to be usurped must be revendicated.

"This difference, so essential and so clear, may be established as follows: by the abandonment of an owner and by the possession, uninterrupted and complying with all other necessary re-

---

[3] The finding of fact No. 6 of the court *a quo* reads:

"That to determine the true boundary on the North part of the property of the plaintiff with the property of the defendant (*sic*) it is necessary that a survey be had."

quirements, of an adjoining owner, the latter acquires by prescription the ownership of that part of another property he has been possessing, and the former owner will not be able to revendicate it, *but will retain as long as something of his property is still his, and regardless of how large the lost area may be, the right to demand a survey,* although as is logical, in said survey the bounds must be set at points quite different from those at which they are or might have been originally, before the prescription referred to takes place." (Italics ours.)

The sixth error assigned is to the effect that the court *a quo* "erred in granting the complaint when the uncontradicted evidence of the defendants disclosed conclusively that La Paloma was fenced by its four cardinals points and had been in the possession of the defendants and their predecessors in title for over 50 years, wherefore a survey would be of no avail." We have stated in the discussion of the fifth assignment of error that the question of prescription or usucapion can not be discussed in an action for survey. That must be put off for the ordinary action that may later be exercised as a result of the survey. The cases cited by the appellants are not applicable. All of them originated in North American jurisdictions whereas, an action for survey is an action recognized by our civil law. Their quotation from 3 Manresa 327 does not support their contention.

The seventh error is the gravest of those assigned by the appellants. They challenge the judgment of the court *a quo* insofar as it orders the defendants to pay one half of the expenses incurred on account of the survey ordered. The appellee merely points out that said assignment is "entirely frivolous" and that the court *a quo* may impose that condition "within its sound discretion." However, he cites no authority supporting his contention, although apparently subdivision (*c*) of that same Rule 34 seems to agree with him.[4] The

---

[4] Subdivision (*c*) of Rule 34 provides:

"(*c*) *Orders or Decrees.*—The orders or decrees which may be issued in accordance with this rule shall specify the time, place, and manner of making the inspection and taking the copies and photographs and making the examinations and surveys, and may prescribe such terms and conditions as are just."

appellants likewise cite no authority on which their assignment may be based. A search among the foremost commentators of the civil law shows that apparently the question has not been dealt with by the jurisprudence. In Muscius Scaevola, Civil Code, it is stated at p. 153 of Vol. 7 (4th ed.) :

"(C) *As to the expenses incurred on account of a survey.*—In the case of judicial surveys and even in the case of friendly surveys among the parties, who must pay for the expenses incurred thereby? This is a hard question to answer, considering the strange silence, both of the Code and of the Law of Civil Procedure, regarding this point. We search the volumes of the *Jurisprudencia del Tribunal Supremo* and they do not solve the difficulty either, although it may be safely supposed that the question at issue must have frequently appeared and does appear before the courts. The precedents furnished by foreign Codes are consistent in declaring such expenses common or distributable pro rata between the person seeking the survey and the other adjoint owners. The Spanish bill of 1851, in harmony with the French Code (§ 646), considers common expenditures those constituted by the aforesaid expenses.

"Our opinion, which differs from the doctrine contained in the foregoing precedents, must be modest and free from pretensions of infallibility, which we shall never entertain and much less in this case, obscure and difficult to solve. We maintain that the expenses of an action for a survey must in justice correspond to the party bringing or instituting it, for he avails himself of a right whose exercise will benefit him in the first place, even though the other adjoining owners may or may not be prejudiced by the delimitation of their respective properties. But the latter are obliged, we may say so, to the survey and also to defend or see to it that their rights be respected before the claim or wish manifested by the person or persons bringing the action, and the former makes use of a right that, as such, is introduced in his behalf, and which he may choose or discard.

"We do not refer to the case where there is objection in an action for a survey, because then, as the formation of a real suit is given rise to, the cost shall be regulated in virtue of the good or bad faith shown during the prosecution of the suit and also pursuant to the general principles of the procedural law in force.

"In the survey conventionally made, the interested parties may also agree among themselves as to who shall defray the expenses, or whether these shall be charged to the common account or pro rata according to the interest of each one in the outcome of the survey.

"The amount spent in stamps in the survey proceedings, the fees for counsel and the fees for the experts and other fees fixed by Tariff and, in general, all disbursements made on account of the survey are the expenses to which we refer, when the survey is ordered by the court, and which we think must be defrayed by the party making use of the right granted him by §384 of the Code, inasmuch as it would be unfair to hold liable for expenses persons who have not caused them either directly or indirectly, but who intervene passively and in most cases compelled in the survey procedure.

"Furthermore, the framers of our Code must have had before them when they drew up this § 384, one of its closest Spanish precedents, namely, that contained in § 510 of the Civil Code Bill of 1851; and the omission of one of the phrases of the latter, to *common expenditures,* in the Section under discussion (which on the other hand repeats the same sense and almost the same words as the other) clearly indicates that the Spanish lawmaker of 1889 has not wished to adopt the views followed by the lawmaker of 1851 as to who shall pay the costs in survey proceedings."

We agree with that opinion. The expenses incurred on account of the survey must be defrayed entirely by the petitioner. In this case, the defendants are not interested in the survey, rather, they object. Why must they be obliged to pay for an act they do not wish to take place? The judgment entered by the court *a quo* must therefore be modified to eliminate subdivision (C) thereof providing that "the expenses of the expert who shall make the survey shall be paid share and share alike by the plaintiff and the defendants." Of course, the imposition of costs must prevail since it is validly based on our statute regulating costs. Section 327 of our Code of Civil Procedure (1933 ed.), as amended by Act No. 411 of May 11, 1951 (Sess. Laws p. 1094).

608

The eighth error assigned was not committed. It is directed to the pronouncement ordering the payment of $250 as attorney's fees, the court *a quo* having concluded that "the defendants have been rash." This Court has held that when in the opinion of the court *a quo* the losing party has acted rashly, the grant of attorney's fees is imperative. *Font* v. *Pastrana*, 73 P.R.R. 238; *Hernández* v. *Caraballo, ante,* p. 27.

For the foregoing reasons, the judgment appealed from will be modified insofar as it orders the defendants to pay one half of the expenses incurred on account of the survey, and it must provide that said expenses shall be paid entirely by the plaintiff.

As thus modified, it will be affirmed.